# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**ROYAL WHITE CEMENT, INC.,**

                   **Plaintiff,**

**-vs-**                                     **Case No.  6:07-cv-480-Orl-31KRS**

**AMBASSADOR SERVICES, INC.,**

                   **Defendant.**

_____

# ORDER

This matter comes before the Court on the Motion for Partial Summary Judgment (Doc. 36) filed by the Plaintiff/Counterdefendant, Royal White Cement, Inc. ("Royal White") and the response (Doc. 38) filed by the Defendant/Counterplaintiff, Ambassador Services, Inc. ("Ambassador").

## I.      Background

Royal White sells cement.  Ambassador provides stevedoring and related services at Port Canaveral.  Royal White contracted with Ambassador to load, unload and store its cement at the port.  Several months after the contract was signed, a dispute developed.  In its complaint, filed March 21, 2007, Royal White contends that Ambassador breached the contract at the behest of the Canaveral Port Authority, which allegedly wished to lease the facilities utilized by Royal White to another business.[1]  (Doc. 1 at 5-6).  In its answer (Doc. 21), Ambassador denied breaching the

_____

[1]Royal White initially sued the Canaveral Port Authority as well as Ambassador, but dismissed its claim against the authority without prejudice on May 17, 2007.  (Doc. 22).

contract and filed a counterclaim, contending that Royal White breached the contract by, *inter alia*, misrepresenting the amount of cement that it would be delivering to the port and the length of time that the cement would be stored at the port.  (Doc. 21 at 7-9).  It is not entirely clear from the record, but it appears that the parties terminated their business relationship in May 2006.

In a letter dated September 8, 2006, Ambassador "agree[d] to release and deliver the Royal White Cement silo from Port Canaveral ... and bill RWC the agreed upon rate for this service as soon as ASI receives the payment on RWC's outstanding balance."  (Doc. 36-2 at 5).  The second and concluding sentence of this letter reads as follows: "After paying for the silo transport and the outstanding balance, RWC will not owe ASI any money."  (Doc. 36-2 at 5).  Attached to letter was a statement showing a total of $4,893.46 owing on two invoices.  (Doc. 36-2 at 6).  Ambassador asserts (and RWC does not deny) that it paid the $4,893.46.

Based on this payment, Ambassador contends that RWC's counterclaim is barred by waiver, release, or estoppel.  (Doc. 36 at 3).  Ambassador further asserts that the written contract did not specify an amount of cement that it would deliver to the port, and therefore it could not have breached the contract by failing to deliver a minimum amount.  (Doc. 36 at 4).

## II.    Standard

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the nonmoving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324-25. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

The Court must consider all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolve all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The Court is not, however, required to accept all of the non-movant's factual characterizations and legal arguments. *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458-59 (11th Cir 1994).

III.    **Application**

Initially, the Court notes that Royal White failed to raise estoppel as an affirmative defense in its answer and is therefore precluded from making such an argument now. *See Funding Systems Leasing Corp. v. Pugh*, 530 F.2d 91, 96 (5th Cir. 1976).[2]   Royal White did raise the affirmative

---

[2]In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206 (11th Cir. 1981), the United States Court of Appeals for the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

defenses of waiver and release in its reply.  (Doc. 24 at 3).  However, the defense of waiver is obviously inapplicable here.  Waiver is an "intentional relinquishment or abandonment of a known right or privilege, or conduct that warrants an inference of the intentional relinquishment of a known right."  *Destin Sav. Bank v. Summerhouse of FWB, Inc.*, 579 So. 2d 232, 235 (Fla. 1st DCA 1991).  Even under Royal White's theory, Ambassador was not relinquishing or abandoning its breach of contract claim.  To the contrary, Royal White's argument rests on the assumption that Ambassador was impliedly *asserting* that claim in the letter so as to bargain it away.  Royal White's theory is one of release, not waiver.

However, even if one accepts, *arguendo*, that the September 8, 2006 letter was an offer of such a release, Royal White has not shown that it satisfied its terms.  The letter provided that, after paying for "*the silo transport* and the outstanding balance, RWC will not owe ASI any money." (Doc. 36-2 at 5) (emphasis added).  While RWC contends it paid the outstanding balance of $4,893.46., it has made no showing that it paid for the silo transport or explained why it was not obligated to do so.  Even if this were not the case, the letter itself clearly indicates that the only thing at issue was this "outstanding balance".  There is nothing in the language of the letter from which a reasonable reader could conclude that Ambassador was offering to release any breach of contract claim it might possess.

Finally, Royal White argues that there was nothing in the written contract requiring it to import a certain minimum amount of cement, and that because Ambassador has indicated that it knew of no oral statements by Royal White relevant to the case, its alleged failure to import a certain tonnage of cement cannot constitute a breach of the contract.  (Doc. 36 at 6).  Ambassador failed to respond to this argument in its brief.  However, the Court's own review of the

counterclaim shows that Ambassador has alleged numerous other breaches besides the alleged failure to import enough concrete.  As such, Royal White's argument is insufficient to justify the entry of summary judgment on the counterclaim.

**IV.     Conclusion**

In consideration of the foregoing, it is hereby **ORDERED AND ADJUDGED** that the Motion for Partial Summary Judgment (Doc. 36) filed by the Plaintiff/Counterdefendant, Royal White Cement, Inc., is **DENIED**.


**DONE** and **ORDERED** in Chambers, Orlando, Florida on February 28, 2008.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party

-5-